# CASES

### ARGUED AND DETERMINED

#### IN

# THE SUPREME COURT

#### OF THE

## STATE OF KANSAS,

DURING A SPECIAL TERM COMMENCING DECEMBER, 1864.

---

THE STATE, *ex rel.* NATHANIEL PRICE, v. THOMAS CARNEY
*et al.*, THE BOARD OF STATE CANVASSERS, *Respondents.*

### *Application for Writ of Mandamus.*

In an application for a writ of mandamus by the relator, claiming that he was elected to the State Senate against the Board of State Canvassers, to prevent their counting certain votes alleged to have been illegal; *Held*, under sections 580-1-2 of the Civil Code, that a want of a plain and adequate remedy in the ordinary course of the law, is an essential pre-requisite to the issuance of the writ in every case; *Held* that the writ, whether alternate or peremptory, must, in addition, show the obligation of the respondents to perform the act, and also show them to be in default in the performance of their legal duty.

Where the motion for the writ was made on the 16th and the law required the board of canvassers to meet on the 19th of December; *Held* that there could not at the time of the application have been an omission to perform.

*Held* that no previous threat or predetermination not to perform, can amount to a default or an omission. *Semble*, that a showing of enough to convince the court that the respondents *will* omit to perform, is not sufficient.

*Held* that a demand and refusal were pre-requisites to the instituting of the proceedings, and not for the purpose of giving the party aggrieved a right to have the thing done. There must have been a defect of duty preceding the demand.

Writ refused.

The facts of the case, sufficient for the presentation of the points decided, appear in the subjoined opinion of the court.

*H. Griswold*, for the relator.

*W. W. Guthrie*, Attorney General, for the respondents.

*By the Court*, CROZIER, C. J.

This is a motion for a mandamus to be directed to the Board of State Canvassers, which shall require that body to do certain things in respect to the canvassing of the vote cast at the election of Nov. 8th, 1864.

The relator shows that he was voted for at the election referred to, for the office of senator in the state legislature, for the county of Doniphan; that of the votes cast within said county, he received a majority; that in pursuance of an act of the legislature of this state, approved March 1st, 1864, elections were held beyond the limits of the state, at which persons in the military service of the United States were permitted to vote, without the townships and wards of which they were residents; that poll books and tally sheets of the votes so given were forwarded to and filed in the office of the Secretary of State; that abstracts of such poll-books and tally-sheets have been made as contemplated by the act aforesaid; that such abstracts show a number of votes sufficient to overcome the majority for the relator, as shown by the votes cast within the county of Doniphan, were cast at the latter elections for a person other than the relator. That the members of the Board of State Canvassers, threaten to count the votes so cast out of the wards and townships in which the voters resided, and give a certificate of election to the persons shown to be so elected. That the relator has demanded of the members of said Board of Canvassers to be informed whether they intend to count the said alleged illegal votes, and has been advised that they do so intend to count

them. That he is without adequate remedy by the ordinary course of the law, and prays for a mandamus, &c.

The motion having been made on the 16th, and the law requiring the Board of Canvassers to meet on the 19th of December, the first question that arises in the case is : was the motion made at the proper time ? The Board of Canvassers had not met, nor were they required by law to meet until after the time of making the motion.

The law of this state concerning proceedings upon mandamus, (*Code of Civil Procedure, sec.* 580,) provides that " the writ of mandamus may be issued to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station."

" SEC. 581. This writ may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law. It may issue on the information of the party beneficially interested."

" SEC. 582. The writ is either alternative or peremptory. The alternative writ must state concisely the facts, showing the obligations of the defendant to perform the act, and his omission to perform it, and command that immediately upon the receipt of the writ, or at some other specified time, he do the act required to be performed, or show cause before the court whence the writ issued, at a specified time and place, why he has not done so; and that he then and there return the writ with his certificate of having done as he is commanded. The peremptory writ must be in a similar form, except that the words requiring the defendant to show cause why he has not done as commanded, must be omitted."

It is apparent from these provisions that although the relator might, after the canvassers had met and canvassed the votes, be without " an adequate remedy in the ordinary course of the law," the court ought not for that reason alone, to award the writ now. A want of a " plain and

The State, ex rel. Price, v. Carney and others.

adequate " remedy in the ordinary course of the law is an essential pre-requisite to the issuance of the writ in every case, but an equally essential pre-requisite is an omission on the part of the defendant to perform the act required of him. The writ, whether alternative or peremptory, must not only show the obligation of the defendant to perform the act, but must also show his omission to perform it. Is it possible that there can be an omission to perform the act before the arrival of the earliest day upon which the law authorizes it to be done? Certainly not; and no previous threat or determination not to do it can amount to an omission. The statute will bear no construction other than that the relator must, at the time of making the motion, show the defendant to be in default in the performance of his legal duty, and no threat or predetermination can amount to a default before the day upon which the act is to be done. In the case at bar the relator has shown that he demanded of the defendants the performance of the act he undertakes to enforce by the order of the court, and an express determination on their part not to perform it; but this does not and cannot amount to an omission to perform the act. It may be, as the relator claims, that after the votes shall be canvassed, he will be without remedy in the ordinary course of the law.

That is a question we cannot consider until it is shown that there is a default; an omission of duty on the part of the defendants. The showing made by the relator might convince the court that the defendants will omit to perform the duty ; but until they have omitted to perform it, the statute does not authorize the court to interfere, no matter how disastrous may be the consequences to the relator.

Some authorities have been cited by counsel for the relator upon two points, viz :

First, that the writ may be issued before the day the canvass is to be made; second, that the relator is, or

will be, without other plain or adequate remedy. Upon the first point we have been referred to Tapping's Mandamus, (pp. 282-3). It is there said, in substance, that a demand and refusal are necessary pre-requisites, but it is not said, as counsel was understood to claim, that a demand and refusal were sufficient, as to time, to authorize the writ. That author, on page 10, says that the writ "issues upon the assumption that that which ought to have been done at a time past has not been done." "That a mandamus will not be granted in anticipation of a defect of duty or error of conduct." What he says about demand and refusal relates to a time subsequent to that at which the act should, according to law, be performed. The demand and refusal were pre-requisite to the instituting of the proceedings, and not for the purpose of giving the party aggrieved a right to have the thing done. The right to have the act performed must precede the demand. There must have been a defect of duty preceding the demand in every case.

The court has taken some pains to find a case in which the writ was allowed before the time at which the law required the act to be performed had elapsed; and although the examination has extended to all the books likely to throw light upon the subject within our reach, no such case has been found, nor has one such been cited by counsel. On the contrary we have found an unbroken current the other way.

The case of The People v. Supervisors of Green County, 12 Barb. 217, is cited for the purpose of showing that this is a case where the relator will be without remedy after the canvassers shall have adjourned, and that therefore he ought to have the writ now. In that case the time for canvassing the vote had elapsed and the board had met and adjourned; and the court say its powers were expended, and that it could not be reorganized. Whether in this conclusion that court was right or wrong, is a question

upon which this court does not feel called upon to express an opinion, but it is very clear that no intimation is given that because the board could not be re-organized after it had met, made a canvass and adjourned, the application would have been entertained if it had been made before the day on which the board was to have met. The only clause, in the opinion of the court, looking in the direction indicated, is the following, to which the attention of the court has been specially called by counsel. Judge Harris says: "I will not say that a state of facts might not occur which would call upon the court to interfere by mandamus to control the action of a board of canvassers, but this can only be done while such board is in existence."

Now, although this may be just such a case as the learned judge was then contemplating as possible to arise, yet even then he thinks the writ ought not to go before the day upon which the board is required to be organized. At most, the expression is merely the opinion of the judge who wrote out the decision upon a question not before the court. But, be it diction or decision, it is clearly against the position of counsel for the relator.

The examination we have given the subject has shown to our satisfaction that the statute of this state is nothing more than a legislative recognition of the law of mandamus as it has been administered in England for many years. No new requirement is made, nor former one dispensed with. The statute is full, clear, and explicit; elementary works are in strict accordance with it, and judicial determination is so abundant, that there seems to be but little room for doubt as to what the law of mandamus is. The statutes, the elementary writers, the courts, without a single exception, so far as we have been able to discover, not only sustain the view we have taken of the question we have been considering, but absolutely compel us so to decide.

The State, ex rel. Price, v. Lawrence.

The conclusion we have arrived at upon this question, renders it, if not improper, at least unnecessary, to decide the other questions presented by counsel in the argument, and we do not desire to be understood as expressing any opinion whatever upon them.

The proceeding will be dismissed at the costs of the relator.

BAILEY, J., concurring.

KINGMAN, J., did not sit in the case.