No. 26,760.

THE DROVERS AND MERCHANTS BANK, *Appellant and Appellee*, v. E. R. WILLIAMSON, *Appellee and Appellant*.

SYLLABUS BY THE COURT.

1. REFERENCES — *Compulsory Reference — Examination of Books.* It is not error for a district court to refer the trial of a cause where the plaintiff, a bank, seeks to recover on a promissory note and the defendant seeks to recover from the plaintiff on several different causes of action, and where the pleadings disclose that in order to determine the issues involved it is necessary to make an examination of the books of the bank concerning its business relations with a partnership, and of the books of the partnership concerning the business relations of the partnership with the plaintiff, and of the partners with each other, and to take evidence concerning all such relations.

2. SAME—*Report—Review and Disposition.* It was not error to deny the defendant's motion for judgment on the findings of fact made by the referee notwithstanding the conclusions of law.

3. PARTNERSHIP — *Mutual Rights and Liabilities — Individual Transactions.* Under findings of fact made by a referee that a note sued on was not a partnership note, but was the individual note of one of two partners, the plaintiff was not entitled to judgment thereon against the other partner; and, under findings of fact made by the referee that money paid by one of the partners to be applied on his individual note to the plaintiff was applied by the plaintiff on an individual note of the other partner, the partner making the payment was entitled to judgment against the plaintiff for the misapplication of the money paid.

Appeal from Nemaha district court; C. W. RYAN, judge. Opinion filed June 12, 1926. Affirmed.

Partnership, 30 Cyc. p. 484 n. 69. References, 34 Cyc. pp. 780 n. 37, 885 n. 89.

*Bennett R. Wheeler, John L. Hunt, S. M. Brewster,* all of Topeka, and *A. L. Guitar,* of St. Joseph, Mo., for the appellant.

*Rufus Emery,* of Seneca, *W. H. Thompson* and *W. F. Thompson,* both of Tulsa, Okla., for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff sued to recover on a promissory note given to it for $3,500 and interest, signed "G. W. Fadely Co. by G. W. Fadely." The defendant denied liability on the note and set up five separate causes of action on which he asked judgment against the plaintiff. The plaintiff was denied judgment, and judgment was rendered in favor of the defendant for $2,585.70 on his third cause of action against the plaintiff. The case was submitted to a referee to make findings of fact and conclusions of law and report them to the court. The defendant demanded a trial by jury. He appeals from the order refusing him a trial by jury, from the order referring the cause to a referee, and from the refusal of the court to render judgment in his favor on the first, second and fourth causes of action set out in his cross petition. The plaintiff appeals from the judgment rendered against it in favor of the defendant, from the refusal of the court to render judgment for the plaintiff notwithstanding the findings of the referee and of the court, and from the order denying to the plaintiff a new trial.

The action was tried twice, the first time to a jury, which returned a verdict in favor of the defendant. On the motion of the plaintiff, that verdict was set aside and a new trial was granted. Before the commencement of the second trial the defendant demanded a jury and objected to a reference of the questions at issue. A jury trial was denied, and the reference was made as to the cause of action set out in the petition and the first, second, third and fourth causes of action set out by the defendant in his cross petition. The defendant's fifth cause of action was for exemplary damages claimed by him on account of the plaintiff's conduct described in the first four causes of action alleged by the defendant. The referee heard the evidence, made exhaustive findings of fact and made conclusions of law thereon. The referee found against the plaintiff on the cause of action on which it sought to recover, and against the defendant on all his causes of action which had been submitted to the referee. The court confirmed and approved all the findings of the referee except finding No. 20, for which the court substituted a finding of

Drovers and Merchants Bank v. Williamson.

its own. The court did not approve the sixth conclusion of law made by the referee, but substituted another conclusion therefor. On the findings as finally approved and confirmed, the court denied judgment in favor of the plaintiff and rendered judgment in favor of the defendant on the third cause of action set out in his cross petition. The findings and conclusions of law as adopted were as follows:

"I. In the fall of 1918, about the month of September, one G. W. Fadely engaged in the sheep business at the stockyards at South St. Joseph, Mo., under the name of G. W. Fadely & Company.

"II. In carrying on of said business the said G. W. Fadely did what is known as a speculative business in sheep, by buying sheep on the market, and afterwards selling them, or by keeping them a day, or a few days, and selling them again. During the time the sheep were on his hands he caused them to be fed at first about the stockyards, and later, shortly before Williamson bought an interest in the business, he rented and fixed up feeding pens of his own.

"III. G. W. Fadely continued in such business alone until about the 4th day of December, 1919, at which time the defendant, E. R. Williamson, purchased an interest in the sheep business of the said G. W. Fadely, and paid for a one-half interest in the business the sum of $5,000.

"IV. G. W. Fadely did his banking business with the plaintiff in this action, the Drovers and Merchants Bank of St. Joseph, under the name of G. W. Fadely & Company, and when the defendant, E. R. Williamson, purchased an interest in the business he paid the $5,000 by check to G. W. Fadely, and it was deposited in the firm name of G. W. Fadely & Company, in such bank, and the business thereon carried on in the same manner, in the name of G. W. Fadely & Company, and in the same account as it had been done previous, when the business was conducted by G. W. Fadely alone.

"V. At the time of the formation of the partnership between G. W. Fadely and the defendant, E. R. Williamson, on December 4, 1919, G. W. Fadely had on hands a large number of sheep, of the value of about $9,000, feed and other equipment for the carrying on of the business, of the value of about $800, which he contributed to the partnership business of Fadely & Williamson carried on as G. W. Fadely & Company.

"VI. It was agreed and understood between G. W. Fadely and E. R. Williamson that Fadely & Williamson should carry on the business in the same name and the same way that it had been carried on and conducted by G. W. Fadely alone, and that E. R. Williamson was to put into said business the sum of $5,000 against Fadely's sheep on hand, and the equipment, feed and other property used in the business.

"VII. Negotiations had been carried on between G. W. Fadely and E. R. Williamson about Williamson buying an interest in said business, during the month of November, 1919, and that it was agreed the partnership was to begin the first day of December, 1919, but the transaction was not finally completed until December 4, 1919, at which time Williamson paid into the business the said sum of $5,000.

"VIII. The partnership agreement between Fadely and Williamson was verbal. An attempt was made about the time of the transaction to reduce their agreement to writing, but such writing was never signed, and not introduced in evidence. The agreement, however, was to the effect that they should be equal partners and share alike in profits and losses.

"IX. At the time when Williamson paid his $5,000 into the business, Fadely was indebted to the Drovers and Merchants Bank, plaintiff, on three notes, one note dated July 19, 1919, for $2,000; one note, dated the 23d day of August, 1919, for $5,000; and one note dated December 2, 1919, for $2.000.

"X. About the time Williamson bought into the business, Fadely and Williamson had a talk with Mr. H. E. Wyatt, the president of the Drovers and Merchants Bank, about establishing a line of credit at the bank, and they were asked by Mr. Wyatt about taking care of the indebtedness of Fadely at the bank, and was told by them in the conversation that such indebtedness was to be assumed by the new partnership, and would be taken up when the sheep on hand were sold.

"XI. G. W. Fadely, prior to the time Williamson became a partner in the business, kept a set of books, under the head of G. W. Fadely & Company. Such books were kept by one B. Biller for said Fadely, and after the formation of the partnership the same books were continued and kept by B. Biller, and the accounts and items of the new firm were entered as accounts and items of G. W. Fadely & Company, and a new set of books was not opened. B. Biller continued in the employ of the new partnership during the time it remained in business.

"XII. Under date of January 6, 1920, Fadely and Williamson sent to the plaintiff a letter, signed by them, of which the following is a copy:

*"Drovers & Merchants Bank, St. Joseph, Mo.*

GENTLEMEN—On and after January 10th, honor checks signed by B. Biller, and countersigned by Geo. W. Fadely or E. R. Williamson, signatures here below written.

G. W. FADELY.

E. R. WILLIAMSON.　　　Yours very truly,　　　FADELY & Co.,
　　　　　　　　　　　　　　　　　　　　　　　By B. BILLER.

"XIII. About December 31, 1919, the plaintiff, Drovers and Merchants Bank, sent to Fadely & Company a statement of the interest due on notes, including the note for $2,000 dated July 19, 1919, and the $5,000 note dated August 23, 1919.

"XIV. On January 2, 1920, the $2,000 note dated July 19, 1919, signed by G. W. Fadely, was paid out of the partnership funds, and an entry showing such payment was made by B. Biller upon the books of Fadely & Company.

"XV. About March 15, 1920, said Drovers and Merchants Bank sent a statement to G. W. Fadely & Company showing the amount due to said bank on notes. Said statement showed that G. W. Fadely & Company was indebted to the bank on the note of $5,000 dated August 23, 1919, signed G. W. Fadely, and was indebted to the bank on a note dated February 4, 1920, signed G. W. Fadely & Company, by E. R. Williamson, for $2,500. Upon receipt of such statement, the bookkeeper, B. Biller, made out a check for $7,605.55, which was countersigned by G. W. Fadely, and sent the same to the bank. Said check was

received by the bank and the said note for $5,000 marked 'Paid,' and the check charged to account of Fadely & Company and the note returned to Fadely & Company, and no complaint was made to the bank about the payment of the said $5,000 note out of the partnership funds.

"XVI. It does not appear from the evidence how much business was done by G. W. Fadely or G. W. Fadely & Company, that might have been termed speculative business, after the formation of the new partnership, and no separate account was kept of the same, and all such business, if any, was done in the name of G. W. Fadely & Company, and passed through G. W. Fadely & Company's account in the bank.

"XVII. On August 7, 1920, Fadely & Williamson, being then indebted to the plaintiff, the Drovers and Merchants Bank, upon a note of $6,000 and upon a note for $500, and desiring still a further line of credit, went to the bank and asked to increase their loan to $10,000, and were told by Mr. Wyatt, president of the bank, that he could not extend them a credit of $10,000 as a firm, and told them it would be an excessive loan to let them sign the firm name to the notes, or to sign their names jointly, and also told them that the bank would extend them the line of credit which they asked for, and would take the note of each one individually for $5,000. .G. W. Fadely and E. R. Williamson each gave his note for $5,000, payable to the bank, and the bank gave the firm of G. W. Fadely & Company a deposit slip for two items of $5,000 each, making $10,000, and charged against them upon such slip, under the head of notes, $9,500, which was made up of the $6,000 note and a $500 note owed by the firm to the bank, and $3,000, being one-half of a $6,000 note held by the bank, and signed by G. W. Fadely and a man by the name of Charles Shotwell, and interest and revenue, amounting to $80, leaving a balance of $420, which was placed to the credit of G. W. Fadely & Company in their account at the bank. The $3,000 of the Shotwell note above referred to was secured by what was designated as Leather Co. stock. The stock was afterwards divided evenly between Fadely and Williamson.

"Afterwards, under date of November 22, 1920, G. W. Fadely executed to the bank an additional note signed by him individually, for $2,000; and on September 20, 1920, E. R. Williamson executed to the bank an additional note signed by him individually, for $3,000. These notes were each placed to the credit of Fadely & Company.

"XVIII. On December 16, 1920, at the request of the plaintiff, the Drovers and Merchants Bank, G. W. Fadely and E. R. Williamson each made to the bank a property statement. The statement signed by G. W. Fadely contained an item, '$7,500 due Drovers and Merchants Bank'; and in the statement signed by E. R. Williamson is shown an item, 'Notes payable to own bank $7,500'; and on the reverse side of the sheet an item, 'General partners, G. W. Fadely and E. R. Williamson, under the name of G. W. Fadely & Co.'

"XIX. At the time of the making such statement the defendant, E. R. Williamson, told the officer of the bank taking the same that the firm of Fadely & Company were quitting business, and thereafter the firm transacted no business except such as was necessary to dispose of the partnership property and apply the proceeds on partnership debts.

· "XX. Finding No. XX is changed and modified to read as follows: 'On January 4, 1921, Fadely & Company sold $1,500 worth of sheep, and Fadely took the deposit to the Drovers and Merchants Bank and applied it on his own individual $2,000 note, dated November 22, 1920, Williamson consenting and agreeing to the $1,500 being so applied. At that time Fadely and Williamson agreed that the money from the sale of the next sheep should go toward paying the individual notes of Williamson at the bank. Afterwards, on January 10, 1921, other firm sheep were sold, and the proceeds, amounting to $2,014.31, was deposited in the bank. As Fadely was leaving for the bank with the money the partners agreed that the money belonged to Williamson and should be applied on his individual notes at the bank, in accordance with the agreement when the $1,500 was applied on Fadely's indebtedness, and Fadely told Williamson that he would apply the money on Williamson's individual notes. Fadely went to the bank with the money and was waited on by W. E. Thompson, an officer of the bank, and Fadely told Thompson that the money belonged to Williamson and instructed him to apply it on the Williamson notes, but Thompson refused to so apply it, and insisted on applying it on the payment of Fadely's individual notes, and did so apply it, $500 to clean up the balance of Fadely's $2,000 note and $1,500 on Fadely's individual $5,000. Thompson then insisted on Fadely giving a new note for the balance of $3,500 due on his $5,000 note. Fadely signed the $3,500 note "G. W. Fadely." After the note was signed, Thompson told Fadely to add "Company" to the signature. Fadely objected, but did sign the note by adding "Co. by G. W. Fadely," as instructed by Thompson. The note so signed is the note sued on in this action. Fadely told Williamson the $2,014.31 had been applied on his notes as agreed, and Williamson did not know the money had not been so applied until some days later, when he went to the bank to investigate and asked to see the notes. The bank refused to apply the money on the Williamson notes, as directed by Fadely as the agent and partner of Williamson, with full knowledge that the partners had quit business and were settling up their affairs, that the firm assets were not sufficient to pay the firm debts and that the $2,014.31 belonged to Williamson and that Williamson's notes were good and collectible and that the bank was in danger of losing on Fadely's indebtedness to the bank, unless this money was applied on the Fadely instead of on the Williamson notes. Thompson and the bank knew that for Fadely to apply the $2,014.31 on his individual notes, and to execute the new $3,500 note as a firm note, would be a fraud on Williamson, and, with such knowledge, the bank, through said Thompson, fraudulently applied said money on the Fadely notes and fraudulently caused the $3,500 note to be signed by Fadely as a firm note.'

"XXI. After the application of the sum of $1,500 on the said $5,000 note of G. W. Fadely, at the request of Mr. Thompson, the vice president of the bank, Fadely executed a new note to the bank for $3,500 to take up the balance on the old note, and signed it first G. W. Fadely, and then at the request of Mr. Thompson, the vice president, added the words '& Co. by G. W. Fadely' to the signature. This note so signed G. W. Fadely & Co. by G. W. Fadely is the note sued on by plaintiff in this action, and at the time it was so signed

the bank, through its officers, H. E. Wyatt and W. E. Thompson, were informed and knew that G. W. Fadely & Company had quit business as a going concern, and were selling the assets of the company and applying the same on the company's indebtedness.

"XXII.  E. R. Williamson had no knowledge of· and did not give his consent to the making of the said new note by G. W. Fadely in the name of Fadely & Company.

"XXIII.  The said note of $5,000 dated August 7, 1920, and the note of $2,000 dated November 22, 1920, signed by G. W. Fadely, and the note for $5,000 dated August 7, 1920, and the note for $3,000 dated September 20, 1920, were all made and executed in the state of Missouri.

"XXIV.  In February, 1921, the plaintiff brought suit in Hidalgo county, Texas, against G. W. Fadely upon the $3,500 note dated January 10, 1921, and upon the $3,000 note, and the $5,000 note signed by E. R. Williamson, and upon a $2,300 note signed by G. W. Fadely, and caused an attachment to be issued and levied upon certain property in Texas, as the property of G. W. Fadely, and plaintiff also brought suit in Oklahoma against E. R. Williamson upon the $3,500 note dated January 10, 1921, signed G. W. Fadely & Company by G. W. Fadely, and also· upon the $5,000 note dated August 7, 1920, and the $3,000 note dated September 20, 1920, signed by E. R. Williamson.  Later the plaintiff brought suit in Nemaha county, Kansas, against the defendant, E. R. Williamson, upon the $3,500 note dated January 10, 1921, signed G. W. Fadely & Company by G. W. Fadely, and also upon the $5,000 note dated August 7, 1920, signed by E. R. Williamson, and the $3,000 note dated September 20, 1920, signed E. R. Williamson, and caused an attachment to issue and be levied upon the property of E. R. Williamson.

"XXV.  The suit against G. W. Fadely in Texas and the suit against E. R. Williamson in Oklahoma were dismissed, and the suit in Nemaha county, Kansas, so far as it pertained to the note signed August 7, 1920, for $5,000, and the note signed September 20, 1920, for $3,000, by E. R. Williamson, was settled by being paid by Williamson, in April, 1921, and without prejudice to the rights of either party so far as it pertained to the suit upon the $3,500 note of January 10, 1921, as sued on by plaintiff, and in controversy in this action. E. R. Williamson also paid costs and attorneys' fees accrued in said actions in the sum of $404.19.  This amount was paid to Groves & Watkins, attorneys at law, St. Joseph, Mo., who were attorneys for the plaintiff in said suit.

"XXVI.  The fees charged and paid were reasonable fees for the services performed by Groves & Watkins as attorneys for the plaintiffs in said matters, and were properly charged to and paid by the defendant, E. R. Williamson, under the laws of the state of Missouri.

"XXVII.  After the beginning of this action, and on or about the 4th day of May, 1923, said G. W. Fadely, in consideration of the surrender of a note for $1,914 which he had theretofore given to E. R. Williamson, in settlement of their partnership affairs, sold and assigned all his interest in the claim of the partnership against the plaintiff, the Drovers and Merchants Bank, for moneys wrongfully paid to the bank, or misapplied by the bank, as shown by the original assignment attached to defendant's cross petition as exhibit B.

"XXVIII. There was no misrepresentation or deception by the bank or its officers to G. W. Fadely, E. R. Williamson, or the partnership, relative to the transaction of the business between G. W. Fadely & Company, when composed of G. W. Fadely alone, or G. W. Fadely & Company when composed of G. W. Fadely and E. R. Williamson, except as found in finding No. XX.

### "Conclusions of Law.

"1. The plaintiff, the Drovers and Merchants Bank, having refused to take or accept the partnership or joint note of G. W. Fadely and E. R. Williamson for $10,000 for the reason that it would be an excessive loan under the banking laws or rules, could not take the individual notes of E. R. Williamson and G. W. Fadely for $5,000 each, and then treat them as partnership notes and hold the individual members liable upon both notes.

"2. E. R. Williamson was not liable upon the $5,000 note dated August 7, 1920, signed by G. W. Fadely, and is not liable upon the $3,500 note dated January 10, 1921, signed Fadely & Co. by G. W. Fadely.

"3. The plaintiff is not entitled to recover upon the note sued on in this action against the defendant, E. R. Williamson, and the defendant, E. R. Williamson, is entitled to recover judgment for the costs of the action, except one-half of cost of transcript, which E. R. Williamson should pay.

"4. The defendant is not entitled to recover anything against the plaintiff by reason of the first count in his cross petition.

"5. The defendant is not entitled to recover anything against the plaintiff by reason of the second count of his cross petition.

"6. Conclusion of law No. 6 is changed and modified to read as follows: 'The defendant, E. R. Williamson, is entitled to recover the amount of $2,014.31, with 6 per cent interest per annum from January 10, 1921, sued for in the third count of the amended answer and cross petition, with costs, except one-half of the costs of transcript, which the defendant, E. R. Williamson, should pay.'

"7. The defendant is not entitled to recover anything against the plaintiff on the fourth count of his petition."

The defendant at all times insisted on a trial by jury. On the hearing of the motions of the plaintiff and of the defendant for a new trial, the court denied the motion of the plaintiff and denied the motion of the defendant as to his first, second and fourth causes of action, and by consent of all parties continued the cause for trial by jury on the fifth cause of action set out in the defendant's cross petition.

1. The defendant argues that the court committed error "in referring this case for trial before a referee over defendant's objections; and after report of referee, refusing defendant a trial by jury on remaining counts of his cross petition." The findings of fact disclose the nature of the transactions that were to be investigated on

the issues made by the pleadings. The pleadings disclosed that to determine the issues involved it was necessary to examine the books of the plaintiff bank showing its dealings and relations with the firm of G. W. Fadely & Co., and also the books of G. W. Fadely showing the relations and transactions between that company and the plaintiff and between G. W. Fadely, one of the partners, and E. R. Williamson, the defendant, the other partner. It is necessary to examine sections 60-2922 and 60-2923 of the Revised Statutes. These sections read as follows:

"All or any of the issues in the action, whether of fact or of law, or both, may be referred, upon the written consent of the parties, or upon their oral consent in court entered upon the journal."

"When the parties do not consent, the court or judge may, upon the application of either, or of its own motion, direct a reference in either of the following cases:

"*First.* Where the trial of an issue of fact shall require the examination of mutual accounts, or when the account is long and on one side only, in which case the referee may be directed to hear and report upon the whole issue, or upon any specific question of fact involved therein.

"*Second.* Where the taking of an account shall be necessary for the information of the court before judgment, in cases which may be determined by the court, or for carrying a judgment into effect.

"*Third.* Where a question of fact other than upon the pleadings shall arise upon motion or otherwise in any stage of an action."

This action came within the first subdivision of section 60-2923. It was not error to refer the issues to a referee to make findings of fact and conclusions of law and report them to the court.

2. The defendant urges that the court committed error in "overruling defendant's motion for judgment on the findings of fact made by the referee notwithstanding the conclusions of law." The defendant says:

"It is clear and certain that the new firm composed of Fadely and Williamson under their contract was not to assume any of the individual obligations of Fadely. It is true that as against the great weight of the evidence the referee erroneously found in finding X . . . that Williamson and Fadely had a talk with Wyatt, the president of the bank, about establishing a line of credit in which Wyatt was told that the indebtedness of Fadely at the bank was to be assumed by the partnership."

The abstract of the plaintiff shows that Mr. Wyatt, president of the plaintiff bank, testified:

"That Fadely and Williamson were in two or three times and were talking about Williamson going into business with Fadely in the sheep speculating business, and one day they came in and said they would like to talk about a

line of credit, and told them that the bank would take care of them for what they needed and asked about the indebtedness then owing to the bank, and was told that it would be assumed by the new partnership, would be taken up at the time the sheep on hand were sold."

There was evidence to support the finding.

The defendant says:

"We believe this court in the situation of the bank, appellant, will not consider any questions raised on its appeal, except whether or not the findings are sustained by any evidence, and whether the conclusions of law were justified under the findings sustained by some evidence; yet in order that the court may fully understand this whole case, and may know that only justice has been done so far as we have proceeded, and that the only errors committed have been against Williamson, we desire to discuss the matter at some length."

The findings of fact did not show that the defendant was entitled to have his motion sustained; it was not error to deny it.

3. The plaintiff says:

"The only question involved in this appeal taken by the Drovers and Merchants Bank, a corporation, is the correctness of the judgment rendered by the court against the appellant and the refusal of the court to enter a judgment in favor of the appellant for the amount due on the note sued upon."

The judgment in favor of the defendant against the plaintiff depends largely on findings Nos. 17, 19, 20, 21 and 22. They show a payment of $2,014.31 by the defendant Williamson through G. W. Fadely to the plaintiff which was to have been applied on the notes of Williamson held by the plaintiff, but the plaintiff, instead of so applying the payment on the request of Fadely, insisted on the payment being applied on notes signed by G. W. Fadely, one of which was for $2,000 and one for $5,000, and requested that Fadely give a new note for what was left of the $5,000 note from Fadely to the plaintiff, and insisted on the new note being signed "G. W. Fadely & Co.," although there was evidence which tended to show that Fadely then told the plaintiff that there was then no company. The plaintiff insists that made no difference, because all of the notes were partnership liabilities. That contradicts the acts of the plaintiff. When the two $5,000 notes were given, the bank refused to extend to the partnership a further credit of $10,000, and refused to take the partnership note for $10,000, but instead extended credit of $5,000 to each of the partners and took the note of G. W. Fadely for $5,000 and of E. R. Williamson for $5,000.

In 30 Cyc. 483 the following language is used:

"A partnership is not liable for money borrowed, or goods bought, or con-

tracts made by a partner in his individual capacity, and not in the character of an agent for the firm, simply because such money, goods, or contracts are applied to the use, or inure to the benefit of the firm."

Parsons on Partnership (4th ed.), section 88, reads:

"He who gives credit to one partner alone cannot call on the rest. This is true, however the credit be given. As, if the creditor sold him goods; (d) or sold to another goods on his guaranty, or received him as surety in any way, or loaned him money; (e) if there is no evidence to show to whom credit was given, the fact that money borrowed by a partner comes to the use of a firm raises a presumption that the loan was made by him as partner, and, if not rebutted, will make the firm liable for the repayment; (f) if the creditor sold goods or loaned money to every one of the partners severally, on their several credit, he could not recover of them jointly, nor hold them mutually responsible, although the money or the goods were immediately used by the borrowers or buyers to make up the stock of the firm, or provide for its debts or business."

Story on Partnership (7th ed.), section 134, in part reads:

"There are other cases which constitute exceptions to the general liability of partners for acts or contracts concerning the partnership business, which deserve special notice in this connection. One of them is, where in the very transaction, although it may be for the benefit or use of the partnership and in the business thereof, yet the credit is exclusively given to the partner transacting it, upon his sole and separate liability. The law is exceedingly clear and well settled upon this point. If money is borrowed, or goods bought. or any other contract is made by one partner upon his own exclusive credit, he alone is liable therefor; and the partnership, although the money, property or other contract is for their proper use and benefit, or is applied thereto, will in no manner be liable therefor."

Numerous decisions might be cited to support the rule stated in these authorities.

Each of the $5,000 notes was the individual obligation of the partner who signed it.

The $2,000 note of Fadely, on which part of the payment of $2,-014.31 was applied, was given after the two $5,000 notes had been executed.

It was a misapplication for the bank to apply the payment by Williamson on notes given by G. W. Fadely. The payment should have been applied on a note given by E. R. Williamson as requested by Fadely. If the note signed by G. W. Fadely was a partnership obligation, the plaintiff could have recovered on it from the defendant, E. R. Williamson. The application of the payment was immaterial to the plaintiff, if both notes were partnership obligations. If they were such obligations, the defendant was liable on each of

them, one as much as the other. If he were not liable on both, it was because they were not partnership obligations.

E. R. Williamson was entitled to have this money applied as he directed. He was damaged in the amount of that payment by the failure of the plaintiff to so apply it, and he can recover therefor.

The contention that judgment should have been rendered in favor of the plaintiff cannot be sustained.

The judgment is affirmed.